UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
SHELLY M. GOLDTHRITE,

                     Plaintiff,                 05-CV-6113-L

           v.                         **DECISION**
                                            **and ORDER**
MICHAEL J. ASTRUE,[1]
Commissioner of Social Security

                     Defendant.
_____

## INTRODUCTION

Plaintiff Shelly M. Goldthrite ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") benefits.[2] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Bruce R. Mazzarella denying her application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), seeking reversal of the Commissioner's ruling or, in the alternative, remand of the matter. The Commissioner cross-moves for judgment on the pleadings pursuant

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable David G. Larimer, Judge, United States District Court for the Western District of New York by Order dated January 10, 2008.

to Rule 12(c), on the grounds that the ALJ's decision was supported by substantial evidence and was made in accordance with applicable law. For the reasons discussed below, the Plaintiff's motion for judgment on the pleadings is granted and the Commissioner's cross-motion is denied.

### BACKGROUND

On July 9, 2001, Plaintiff Shelly M. Goldthrite applied for Supplemental Security Income benefits, claiming that she became disabled due to back, neck, and shoulder pain on July 23, 1997 (Tr. 54-56). Her application was denied on February 25, 2002 (Tr. 28-31). Thereafter, she timely filed a request for an administrative hearing which was held before the ALJ.  In a decision dated August 24, 2004, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 14-24). Plaintiff then filed for review of the ALJ's decision by the Social Security Appeals Council (Tr. 8-10). That request was denied by the Council on January 14, 2005 (Tr.  5-7), and Plaintiff subsequently filed this action.

In finding that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for SSI. See 20 C.F.R. § 404.1520 and

416.920.[3] Under step one of that process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (Tr. 15).

At steps two and three of the analysis, the ALJ found that Plaintiff had "severe" back and neck pain (Tr. 16). He found these impairments to be severe within the meaning of the Regulations, but not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. Id. At step four of the five-step evaluation process, the ALJ concluded that the Plaintiff had no past relevant work (Tr. 21). However, the ALJ found that the Plaintiff retained the residual functional capacity to perform a full range of medium, light, and sedentary work. Id.

The ALJ then turned to step five of the analysis and the question of whether there was any other work in the national economy that the claimant could perform. Id. Finding that the Plaintiff had only exertional limitations, the ALJ applied the Medical-Vocational guidelines found in Appendix 2 of Subpart P of section 404 of the Regulations. The ALJ made note of Plaintiff's age of 50-53 years ("closely approaching advanced age"), her educational level of less than a 9th grade education ("limited education"), and her work

---

[3]Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

history as an unskilled worker. Id. Based on these facts, the ALJ applied Medical Vocational Rule 203.18 and found that the Plaintiff was not disabled, and thus ineligible for SSI. Id.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits, and this section has been made applicable to SSI cases by 42 U.S.C. § 1383(c)(3). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Plaintiff and the Commissioner each move for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

A District Court should order payment of SSI benefits in cases where the record contains persuasive proof of disability and remand for further evidence would serve no purpose. See Carroll v. Secretary of Health and Human Serv., 705 F.2d 638, 644 (2d Cir. 1981). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." Id. Because this court finds that (1) the ALJ's decision was not supported by substantial evidence and (2) the record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose, judgment on the pleadings is granted for the Plaintiff.

## II.   The ALJ's decision was not supported by substantial evidence and was improper as a matter of law.

The Commissioner contends that the medical evidence in the record supports a finding of no disability for the period from July, 1997 through the present. The Plaintiff argues, *inter alia*, that the ALJ failed to follow the Second Circuit's treating physician rule, improperly discounted the subjective testimony of the Plaintiff, and improperly substituted his own judgment for medical opinion. The Plaintiff is correct on all accounts, as explained below.

A.   The ALJ failed to give proper weight to the opinion of Plaintiff's treating physician.

Plaintiff contends that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Richard C. Dobson. It is well established that the opinion of a treating physician is entitled to controlling weight if well supported and not contradicted. See 20 C.F.R. § 416.927; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (treating physician rule grants controlling weight to opinion of treating physician). Courts in this Circuit require that an ALJ provide explanations, or "good reasons," when choosing to discount the opinion of a treating physician. See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). In addition, when the treating physician's opinion is not given controlling weight, adjudicators must apply various factors in order to ascertain the weight to give the opinion: (1) the frequency of examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. See 20 C.F.R. § 416.927; see also Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); SSR 96-2p.[4]

Applying these relevant factors, there is considerable reason to give Dr. Dobson's findings controlling weight. Dr. Dobson is a board-

_____

[4]The opinions of consultative examiners, however, are to be accorded "some weight," or less weight than the inherently more reliable opinions of treating sources. 20 C.F.R. §§ 404.1512, 404.1527, 416.912, 416.927; See Westphal v. Eastman Kodak Co., 2006 WL 1720380 4, 5 (W.D.N.Y. 2006).

certified Physical Medicine and Rehabilitation specialist (Tr. 184).
Notwithstanding these qualifications, the ALJ not only refused to
accord his opinions controlling weight, he gave them "little weight."
(Tr. 19) The ALJ determined that in his judgment, "objective tests...
and clinical evaluation... do not support Dr. Dobson's conclusion of
total disability or his over-prescribing of medication." Id.
(Emphasis added.)   However, the ALJ offers nothing more for this
conclusion than his own medical opinion, and his gratuitous
observation that "She is taking more narcotics than most people who
are in immediate recovery from surgery."  (Tr. 20); see Powell v.
Shalala, 1993 WL 500839 at *10 (D.Kan. 1993) ("ALJ does not cite to
any documents of record, and the court has not found any, which state
that plaintiff is over-medicated[.]") Here the ALJ did not rely upon
any documents in the record nor any opinion of a treating or
examining physician that the Plaintiff is over medicated.  In fact,
the record shows that Dr. Dobson carefully monitored Plaintiff's use
of medication, noting several times that her medication use was
stable.  (Tr. 195, 220).  A review of the record reveals that Dr.
Dobson slowly increased the strength and types of medications
prescribed to Plaintiff, presumably as her pain became more
unmanageable.

Dr. Dobson had a treatment relationship with the Plaintiff that
extended over several years and the record indicates visits were
sometimes as frequent as every six weeks (Tr. 157-183, 187-235). In

addition, the objective evidence in the record supports the diagnoses made by Dr. Dobson, including cervical spondylosis, degenerative disc disease, and related back and neck pain. Both x-ray and MRI findings have shown that Plaintiff suffers from cervical spondylosis, with disc bulges and neural foraminal stenosis, although mild, of the cervical spine (Tr. 230-232). Despite the ALJ's minimalized characterization of these findings as showing "only cervical spondylosis," (Tr. 19) cervical spondylosis is capable of causing significant dysfunction. (Tr. 241); See Singletaary v. Apfel, 981 F.Supp. 802, 806-807 (W.D.N.Y. 1997). Moreover, the ALJ does not question these objective diagnoses. (Tr. 19, 22) (finding that Plaintiff has "severe" impairments and instead focusing on level of pain and limitation that could result from such diagnoses).

Further, a review of the record reveals that the ALJ failed to consider any of the relevant factors that must be applied when the ALJ chooses not to give the treating physician's opinion controlling weight. He instead provides several after-the-fact justifications for not following the treating physician rule without providing "good reasons" for doing so. See Schaal v. Apfel, supra.

The ALJ discounts Dr. Dobson's opinion because he arrived at his conclusion that the plaintiff was disabled "before all the tests were even done" (emphasis in original) (Tr. 19). The record, however, is clear that the opinion which the ALJ refers to is an initial evaluation (in fact the document is titled as such) based upon the

evidence that was available to Dr. Dobson at that time (Tr. 181-83). The fact that Dr. Dobson later edited and refined his diagnosis as examination and treatment progressed should afford him greater credibility, not less. As noted by the Court of Appeals, the fact that a treating physician relies on a patient's "subjective complaints hardly undermines his opinion as to her functional limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic tool.'" See Green-Younger v. Barnhart, 335 F.3d at 99, 107 (2d Cir. 2003) (quoting Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997)).

The ALJ also dismisses Dr. Dobson's opinion because he did not refer "[plaintiff] to a specialist in orthopedics or neurology, nor to pain management or even physical therapy" (Tr. 19). However, it is not within the province of the ALJ to decide when and how often a treating physician needs to "retest" a patient who is already being treated, presumably appropriately from the perspective of the physician, for chronic complaints. See Shaw v. Chater, 221 F.3d 126, 135 (2d Cir. 2000) (evidence that treating physician recommended only conservative treatment "is not the type of overwhelmingly compelling type of evidence that would permit the Commissioner to overcome an otherwise valid medical opinion"). In addition, the ALJ chose not to contact or develop the record with regard to the podiatrist mentioned twice by the Plaintiff (Tr. 113, 266-67), despite his affirmative duty to do so. See Rosa, 168 F.3d at 72. Furthermore, the Plaintiff

could not afford such treatment, so there would be no purpose for making a referral. Dr. Dobson had limited treatment options due to Plaintiff's inadequate insurance coverage. In any event, the decision to seek (or not seek) the advice of a specialist in a particular field is a medical one, and the ALJ is not qualified to second guess or "set his own expertise against that of" the Plaintiff's treating physician. See McBrayer v. Sec'y of Health and Human Serv., 712 F.2d 795, 799 (2d Cir. 1983).

Moreover, in assessing Plaintiff's credibility, the ALJ opines that there is "no rational basis for use of any cane," (Tr. 20) despite Dr. Dobson having prescribed one specifically due to her repeated falls. (Tr. 160, 189, 198) This "second-guessing" on the ALJ's part is particularly egregious. As this Court has noted, "[i]f the regulations governing the weight to be accorded a treating physician's findings are to continue to have any value, an ALJ should not be allowed to usurp the role of the physician." See Gilbert, 70 F.Supp.2d at 290. Here, the doctor's reasons for prescribing a cane for the Plaintiff was quite specific.  He stated that her falls were typical of people with chronic back pain and one of the reasons why she would be unable to work. (Tr. 189, 198).

The ALJ notes that Dr. Dobson counseled the Plaintiff with regard to Social Security disability (Tr. 19). That a doctor discusses a patient's options for supporting themselves while under a disability is not a justification to discredit that doctor's

findings. On the contrary, there is good reason to discuss public assistance, as Dr. Dobson makes several notes regarding the Plaintiff's inability to pay for various tests and treatments he feels would be probative and/or beneficial (Tr. 158, 160, 162, 168, 169, 171, 172, 174, 182). Furthermore, that a doctor "naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002) (citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir.1987)).

Instead of ascribing controlling or even compelling weight to the Plaintiff's treating physician of several years (the source of the majority of the medical record), the ALJ gave greater weight to a consultative exam performed by Dr. Pol Akman that gave no specific description of the Plaintiff's functional limitations other than "mild restriction" (Tr. 118-121). Other than the one-time evaluation by Dr. Akman and the continuing treatment by Dr. Dobson, there are no medical records from physicians with regard to the Plaintiff's physical limitations. "The reports of individual examinations are generally given less weight because they lack the 'unique perspective to the medical evidence' that a treating physician's opinion would provide." see Iannopoll v. Barnhart, 280 F.Supp.2d 41, 48 (W.D.N.Y. 2003) (citing 20 C.F. R. § 404.1527(d) (2)). To give Dr. Akman's one time examination more weight than Dr. Dobson's opinions representing

patient contact and treatment over an extensive period of time was clear error.

The ALJ, therefore erred in rejecting Dr. Dobson's consistent, repeated opinion that Ms. Goldthrite was totally disabled.  Although the ALJ correctly observed that Dr. Dobson's opinion that the Plaintiff is "totally disabled" is an issue reserved to the Commissioner (Tr. 19), (see SSR 96-5P), nonetheless, Dr. Dobson's medical findings supporting his opinion concerning the Plaintiff's disability are entitled to controlling weight as a matter of law.

B.   The ALJ improperly discounted the Plaintiff's subjective complaints.

In deciding whether to accept evidence of subjective testimony in support of a Plaintiff's claim for disability, the ALJ must perform a two-stage analysis.  The claimant is required to (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir.1996); 20 C.F.R. § 416.929. The second stage of the analysis requires the ALJ to assess the credibility of the claimant's testimony regarding the severity of his or her symptoms. Absent evidence of malingering, the ALJ is required to accept the claimant's testimony. In failing to assign a claimant substantial credibility, the ALJ is required to make specific findings, including a clear and convincing rationale for the

rejection, stating which testimony is not credible and what facts in the record lead to that conclusion. See Smolen, 80 F.3d at 1284.

The Plaintiff has met her burden with regard to the first stage of the analysis. The ALJ found that the Plaintiff has "severe" impairments (Tr. 16, 18, 22). The ALJ also acknowledges, at least to some degree, that the Plaintiff's combination of impairments could cause symptoms of the same nature as those claimed by the Plaintiff - back and neck pain (Tr. 16, 18-20). With respect to the second part of the test, the ALJ chose to disregard almost entirely the Plaintiff's subjective complaints of pain.  None of the ALJ's reasons for doing so, either separately or in combination, provide a valid basis for rejecting her subjective complaints.

"It has been established, both in this Circuit and elsewhere, that subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); see also Lugo v. Chater, 932 F.Supp. 497, 502 (S.D.N.Y. 1996). Although the ALJ also has the discretion to evaluate the credibility of a claimant's complaints of pain, in doing so, he is also required to take objective medical reports into his consideration.  See Marcus, 615 F.2d at 27. Furthermore, the ALJ may not summarily discount subjective complaints of pain. See id.; see also Ber v. Celebrezze, 332 F.2d 293, 299 (2d Cir. 1964) ("Even pain unaccompanied by any objectively observable

symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits"). Moreover, the Commissioner has provided guidance for the analysis of subjective complaints of pain in 20 C.F.R. §§ 404.1529 & 416.929. See also SSR 96-7. Once a medically determinable impairment has been established, the ALJ must properly evaluate the claimant's symptoms in the context of the entire record. See id. (This ruling also provides that the ALJ's decision must contain specific reasons for any findings concerning credibility).

The claimant's treating physician, Dr. Dobson, has repeatedly opined that Ms. Goldthrite cannot work at all which should have been given controlling weight since a review of the total record contains substantial evidence to support that medical opinion.  Yet the ALJ concluded that plaintiff is not credible because she is a consistent complainer simply to gain financial support.

> [T]his is the claimant's third application for supplemental security income. Obviously, there is some learning curve here about the claimant's complaints, but still no objective evidence of any competent producing cause for such complaints of pain and, based on Dr. Ransom's report, no psychiatric basis for her alleged chronic pain.

(Tr. 20)

In commenting further on Plaintiff's credibility, the ALJ emphasizes that the Plaintiff was previously on welfare, is currently on Medicaid, and was receiving food stamps.  He states that

> [W]hile the claimant does have "severe" impairments by definition, the undersigned does

-14-

not find her allegations of total and continuing
disability to be credible, supported by, or
consistent with the medical evidence of record as
a whole. The ALJ notes that the claimant was
previously on welfare for seven years, but is no
longer, has been receiving Medicaid for the last
four years, and recently began receiving food
stamps ($141.00 per month). The claimant
testified that she has not attended any
vocational rehabilitation nor looked for any work
on her own, which does not give rise to a
favorable inference of an individual well
motivated to work within her limitations when
other sources of income are available.

(Tr. 19)

Accordingly, on the issue of plaintiff's credibility, the ALJ
showed "a shocking distrust of the plaintiff and her motivations."
See Caldwell v. Sullivan, 736 F. Supp. 1076, 1081 (D. Kan. 1990)
(ALJ's statement that plaintiff's receipt of welfare benefits showed
she did not want to work is "legally unsupportable," as "[a]n ALJ is
required to be fair and impartial, not prejudiced against a claimant
because of the claimant's financial status.") In this case, contrary
to the ALJ's accusations, Plaintiff testified that she has attempted
to work since the onset of her disability. Plaintiff worked at a
company named Gold Pride stuffing envelopes for a brief period in
2001 (Tr. 250-251). Dr. Dobson's notes indicate that Plaintiff also
attempted to work in a pizza shop in 1997 (Tr. 175). Furthermore, in
regards to Plaintiff's receipt of public assistance, this court finds
it problematic that a Plaintiff would be found less credible simply
because they are of limited means. The fact that the Plaintiff was
receiving other income from public assistance does not, by itself,

-15-

mean that she is less credible when testifying about her pain.   See Rinker v. Chater, 1997 WL 47791 (S.D.N.Y.);   Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996);   Leggitt v. Sullivan, 812 F. Supp 1109, 1120 (D. Col. 1992) (rejecting finding that work disincentive posed by receipt of workmen's compensation benefit made claimant less credible).

In addition, the ALJ doubted Plaintiff's arthritis complaints in her hands and feet and "alleged need for special shoes," noting that she did not even wear them to the hearing. (Tr. 20) However, the ALJ neglected to refer to Plaintiff's testimony that she was not wearing them upon advice of her doctor because she was wearing a leg brace at the time. Courts have condemned this type of misrepresentation of the record. See Pagan on behalf of Pagan v. Chater, 923 F.Supp. 547, 555 (S.D.N.Y. 1996). The ALJ did not even follow up with Plaintiff's podiatrist , to whom Plaintiff referred both at the hearing (Tr. 266-267) and in her reports (Tr. 113). The ALJ "is under a duty to develop a claimant's medical history, even when the claimant is represented by counsel ... or a paralegal." See Snyder v. Barnhart, 212 F.Supp.2d 172, 178 (W.D.N.Y. 2002) (quoting Rosa, 168 F.3d at 79).

The ALJ further based his credibility finding on his own assessment that "the claimant's activities are not indicative of a person with disabling impairments." (Tr. 20) The ALJ analyzed the Plaintiff's daily activities in conjunction with her credibility and

found, despite her sworn testimony that she "obviously has to perform more household functions than she admits to" Id. To make this finding, the ALJ took note of the fact that Plaintiff resides with a person who has a prosthetic leg and assumed (without any evidence to support the assumption) that person's ability to contribute to the household was somehow diminished. This assessment was done despite testimony from Plaintiff and a letter from Plaintiff's friend Christopher Schreiber that she needs help with many areas of daily living (Tr. 268-72, 117). Contrary to the ALJ's findings, the report of the consultative examiner, Dr. Ransom regarding Plaintiff's daily activities is consistent with her testimony at the hearing, the only difference being that Plaintiff told Dr. Ransom she could do "some laundry" and testified (some three years later) that her girlfriend does all of it (Tr. 127, 269).

While the Plaintiff's daily activities are relevant in evaluating her subjective complaints of pain, 20 C.F.R. § 416.929(c)(3)(I), a Plaintiff "`need not be an invalid to be found disabled' under the Social Security Act." See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting Williams v. Bowen, 859 F.2d 255, 260 (2d Cir. 1988)). Indeed, I find that Plaintiff's daily activities are consistent with someone who has a disability. She requires help for almost all of her household chores and personal activities, requires a shower chair for aid with hygiene, and testified that she struggles to lift a gallon of milk (Tr. 127, 268-272).

The ALJ also questions the Plaintiff's credibility by implying "possible misuse" in regard to her medication. The ALJ extensively cross-examined Plaintiff at the hearing and referred to her "possible misuse" in his decision by stating that she "lost her bottle of Lorcet." (Tr. 19). Given that the ALJ extensively decries the amount of medication the Plaintiff receives as excessive (Tr. 19-20), and also that the record reflects the Plaintiff has been prescribed various medications for several years (Tr. 114, 259-268), it is not reasonable to conclude that the Plaintiff was misusing her medication simply because she lost one bottle of medication on one occasion. Further, as discussed previously, the ALJ erred in second-guessing the treating physician's prescribing of medications. See Rosa, 168 F.3d at 82 n. 7 (credibility assessment based on an incorrect assessment of the medical evidence cannot be accepted).

I find that the ALJ's determination regarding Plaintiff's credibility is not supported by substantial evidence.  I find no evidence in the record to suggest malingering on the part of the Plaintiff and, therefore, her subjective testimony is entitled to substantial credibility as a matter of law. See Smolen, 80 F.3d at 1284; SSR 96-7p. The medical evidence, particularly from her treating physician, as well as her descriptions and complaints about her problems support a finding of credibility under SSR 96-7p. Thus, the ALJ's determination concerning Plaintiff's credibility is not supported by substantial evidence.

C.   The ALJ improperly substituted his own judgment for competent medical opinion.

An ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion. "In analyzing a treating physician's report, `the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion,' nor can [he] `set his own expertise against that of a physician who submitted an opinion or testified before him.'" See Gilbert, 70 F.Supp.2d at 290 (quoting Balsamo, 142 F.3d at 81); see also Frankhauser v. Barnhart, 403 F.Supp.2d 261 (W.D.N.Y. 2005) (ALJ Mazzarella's finding of "not disabled" reversed by court because, inter alia, ALJ substituted his own judgment for competent medical opinion).

As previously mentioned, the ALJ makes medical judgments on several occasions in his decision which are not based upon medical evidence in the record. The ALJ refers to the Plaintiff's prescriptions as excessive at more than one point in his decision, such as his reference to Dr. Dobson's "over-prescribing of medication" (Tr. 19). Of particular note, he states he has "no doubt that the claimant's pain medications `help', as she is taking more narcotics than most people who are in immediate recovery from surgery" (Tr. 20). There is no medical evidence in the record, however, to support the ALJ's conclusion that Dr. Dobson had "over-prescribed" pain medication to the Plaintiff. The ALJ's comments to that effect are gratuitous and wholly without merit.

The ALJ also makes reference to the Plaintiff's use of a cane, concluding that there is "no rational basis" for its use (leaving open the suggestion that she used it as a theatrical prop to visually support her disability).   Again, the ALJ is improperly making a medical finding that is not based upon any evidence in the record. On the contrary, the cane used by the Plaintiff was prescribed by Dr. Dobson because her frequent falls are of the type commonly associated with her back problems (Tr. 189). The ALJ, in his decision and at the hearing, questioned the Plaintiff's "alleged" need for special shoes and especially the fact that she did not wear them to the hearing (Tr. 20). However, Plaintiff testified that she was instructed by her podiatrist to refrain from wearing her shoes at that time, due to the fact that she was wearing a brace related to an ankle sprain (Tr. 266). The ALJ was given the name and specialty of this podiatrist, but the ALJ did not develop the record in that respect, though it was his obligation to do so. See Rosa, 168 F.3d at 72).

**III.   The ALJ erred in finding that the Plaintiff could perform unskilled work at the medium, light, and sedentary levels of exertion.**

In part five of the five-part disability evaluation, the ALJ found that the Plaintiff retained the ability to perform work at the medium, light, and sedentary levels of exertion, thus dictating a finding of "not disabled" (Tr. 21). This finding is not supported by substantial evidence in the record.

The ALJ, in determining that the Plaintiff is capable of medium work, cites to nothing in the record. See Orr v. Barnhart, 375 F.Supp.2d 193, 198-199 (W.D.N.Y. 2005) (Court criticized ALJ for failure to cite any medical opinion that states plaintiff could perform full range of sedentary work). The ALJ simply claims that, in order to determine the Plaintiff's Residual Functional Capacity ("RFC"), he considered the "entire record" (Tr. 21). To the extent that the ALJ relied on Dr. Akman's consultative examination to make his RFC determination, a doctor's "use of the terms `moderate' and `mild,' without additional information, does not permit the ALJ, a layperson notwithstanding [his] considerable and constant exposure to medical evidence, to make the necessary inference" that the Plaintiff can perform work at a specific level of exertion. See Curry v. Apfel, 209 F.3d 117 (2d Cir. 2000); Soto v. Barnhart, 242 F.Supp.2d 251 (W.D.N.Y. 2003).

As discussed *supra*, in concluding that the Plaintiff retained the capacity to do several types of work, the ALJ improperly dismissed the majority of the record, including findings of the Plaintiff's treating physician and her subjective testimony. The ALJ did not give controlling weight to the treating physician, Dr. Dobson, who consistently opined that Plaintiff cannot work at all. To make a correct finding of the Plaintiff's RFC requires a proper consideration of the treating physician records and Plaintiff's subjective testimony. In doing so, I find that the Plaintiff's testimony and the medical evidence supports a finding

that she can lift no more than 10 pounds for the purposes of doing work and is limited in her ability to stand and walk. As such, the Plaintiff is limited to work at the sedentary level of exertion. See 20 C.F.R. § 416.967(a). Applying the Plaintiff's age of 50 at the time of her application, limited 9th grade education, and no relevant work experience to the Medical-Vocational Guidelines found in Appendix 2 to 20 C.F.R. Part 404, Subpart P, Plaintiff is "disabled" under rule 201.09 as of her 50th birthday, June 1, 2001.[5]

### CONCLUSION

This court finds that the Commissioner's decision denying the Plaintiff benefits under SSI was not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. I therefore grant judgment on the pleadings in favor of the Plaintiff and remand this matter to the Social Security Administration for calculation of benefits.

**ALL OF THE ABOVE IS SO ORDERED.**


 s/Michael A. Telesca

   MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           February 12, 2008

---

[5] In concluding that the Plaintiff is disabled, the court applies the Plaintiff's age range as of the time of application and the point of the Administrative hearing. In the interim, the Plaintiff has passed the age of 55 and is currently considered "Advanced age" under the guidelines. Given the same medical condition, if the Plaintiff applied for SSI today, she would be eligible even if she was only found to be limited to medium work.